IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MIGUEL KELLER § | |
| § | |
| V. § | |
| § | Civil Action No. 4:08-cv-01236 |
| MARINER ENERGY, INC.; § | |
| ISLAND OPERATING COMPANY, INC.; § | |
| UNITED PRODUCTION AND § | |
| CONSTRUCTION SERVICES, INC.; § | |
| POWER PERFORMANCE, INC. and § | |
| LIVING QUARTERS § | |
| TECHNOLOGY, INC. § | |
| MARINER ENERGY RESOURCES, INC. § | JURY DEMANDED |

TO THE HONORABLE JUDGE HITTNER:

COMES NOW Plaintiff Miguel Keller ("Mr. Keller") and files this Response to Defendant Mariner Energy Inc. and Mariner Energy Resources, Inc.'s ("Mariner Energy") Motion for Summary Judgment and in support would show as follows:

## NATURE OF CASE AND SUMMARY OF RESPONSE

1.      Mr. Keller was hired by Shamrock Management L.L.C. on August 17, 2007 ("date of the incident") as a production worker and sent via helicopter to the Eugene Island 342 C platform (or "the platform") in the Gulf of Mexico to assist in oil and gas production operations on Mariner Energy's offshore production platform. On the date of the incident, Mariner Energy's field foreman Eugene "Lamar" Cormier supervised operations aboard Mariner Energy's platform and personally oversaw a worksite orientation for Mr. Keller.  Per Coast Guard Regulations, binding precedent, and assumed legal responsibilities, platform owner Mariner Energy was directly responsible for ensuring that the Eugene Island 342 C platform was free from workplace hazards that might endanger a production worker such as Mr. Keller.

2. On August 17, 2007, the Eugene Island 342 C platform was owned and controlled by Mariner Energy and Mariner Energy benefited from operations aboard the platform. In the hours preceding the incident, Mr. Keller flew out to the Eugene Island 342 C platform with Mariner Energy foreman Lamar Cormier, received instruction from Cormier, and contributed to operations while on Mariner Energy's platform premises.

3. Furthermore, on August 17, 2007 at approximately 11:30 a.m., subsequent to his worksite orientation with foreman Cormier, Mr. Keller traversed the lavatory area of the Mariner Energy's Eugene Island 342 C platform, tripped on an unsecured, hazardous, and generally unfit step attached to the platform, and fell. Mr. Keller suffered significant injuries as a result of this workplace fall. The testimony of maritime safety expert Captain John Manders, Mariner Energy foreman Lamar Cormier, and Mr. Keller confirm Mariner Energy's duty to reasonably oversee the safety of operations aboard its platform, legal responsibility to Mr. Keller to provide a safe workplace premises, conscious undertaking of a jobsite orientation for Mr. Keller's benefit, and lack of communication to Mr. Keller regarding the hazardous step conditions in the Eugene Island 342 C platform area. Mariner Energy's Motion for Summary Judgment hinges upon the faulty argument that no basis for liability exists because it was the platform owner. Because no such platform owner immunity exists, Defendant Mariner Energy's motion must be denied.

4. At a minimum, a sufficient fact issue exists regarding whether Defendant Mariner Energy neglected to meet its duties under the law and whether this failure proximately caused Mr. Keller's injuries. Mariner Energy's Motion for Summary

Judgment is an improper attempt at ignoring its responsibilities as a platform owner and resolving all of the factual issues in its favor.  Because a reasonable jury can conclude that Defendant Mariner Energy is liable for Mr. Keller's injuries aboard its platform, Defendant Mariner Energy's Motion for Summary Judgment must be denied.

## PROPER SUMMARY JUDGMENT EVIDENCE

**Exhibit A**:   Deposition of Eugene Lamar Cormier (Mariner Supervisor)

**Exhibit B**:   Affidavit of Captain Manders

**Exhibit C**:   Expert Report of Captain Manders

**Exhibit D:**   Deposition of Miguel Keller

**Exhibit E:**   Deposition of Danzel Marcantel

## STANDARD OF REVIEW

**I.      Conventional Summary Judgment Standard**

5.      Summary judgment is only proper "if the pleadings, depositions, answer to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving the absence of existence of a genuine issue of material fact. *Celotex v. Catrett*, 477 U.S. 317 (1986). The burden then shifts to the non-movant to show that summary judgment is inappropriate. *Fields v. City of S. Houston*, 922 F.2d 1183 (5th Cir. 1991). A genuine issue of material fact exists if the evidence would allow a reasonable jury to return a verdict in favor of the non-mover. *Roberson v. Alltell Info. Servs.*, 373 F.3d 647 (5th Cir. 2004). Once the non-movant demonstrates the genuine issue of material fact,

summary judgment must be denied. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986).

## ARGUMENTS AND AUTHORITIES

**II.    There is no such thing as platform owner immunity, a platform owner like Mariner may always be held liable for negligently overseeing the safety of operations aboard its premises**

6.      The general rule that a principal who employs an independent contractor is not liable for injuries to an employee of that contractor does not exempt a platform owner from liability if it unreasonably oversees the safety of operations aboard its platform. *See Dobbs v. Gulf Oil Co.,* 759 F.2d 1213 (5th Cir.1985); *Haas v. Atlantic Richfield,* 799 F.2d 1011 (5th Cir. (La.) 1986). Mariner Energy's inapposite analysis of construction operations on the platform improperly ignores established maritime standards regarding premises safety and discards the actual circumstances highlighting Defendant Mariner Energy's duty to reasonably oversee the safety of operations while Mr. Keller was working aboard its platform.

*Mariner Energy Owed Mr. Keller a Duty*

7.      In general, the owner of a facility has the duty of exercising reasonable care for the safety of persons on his premises and the duty of not exposing such persons to unreasonable risks of injury or harm. *Campbell v. Louisiana Department of Transportation and Development,* (La. 1995); *St. Hill v. Tabor,* 542 So.2d 499, 502 (La. 1989); *Harris,* 455 So.2d at 1369; *Walker v. Union Oil Mill, Inc.,* 369 So.2d 1043, 1047 (La. 1979). A duty may be imposed by legislation, ordinance or rule of law. *Cormier v. T.H.E. Ins. Co.,* 745 So.2d 1 (La. 1999).

8. The Code of Federal Regulations also imposes a duty upon Mariner Energy directly applicable to this incident:

> TITLE 33 CFR - NAVIGATION AND NAVIGABLE WATERS.
> CHAPTER I - COAST GUARD, DEPARTMENT OF HOMELAND SECURITY.
> PART 142 - WORKPLACE SAFETY AND HEALTH.
> Subpart A - General.
>
> Sec. 142.4 Duties of lessees, permittees, and persons responsible for actual operations.
> (a) Each holder of a lease or permit under the Act shall ensure that all places of employment within the lease area or within the area covered by the permit on the OCS are maintained in compliance with workplace safety and health regulations of this part and, in addition, free from recognized hazards.
> (b) Persons responsible for actual operations, including owners, operators, contractors, and subcontractors, shall ensure that those operations subject to their control are conducted in compliance with workplace safety and health regulations of this part and, in addition, free from recognized hazards.
> (c) ``Recognized hazards'', in paragraphs (a) and (b) of this section, means conditions which are:
> (1) Generally known among persons in the affected industry as causing or likely to cause death or serious physical harm to persons exposed to those conditions; and
> (2) Routinely controlled in the affected industry.

33 C.F.R. § 142.4. Captain John Manders, an expert in maritime safety, analyzed the duty imposed by these regulations on Mariner Energy and concluded that Mariner Energy breached its duty as follows:

> 2. The failure to secure a step or steps aboard the Eugene Island 342 C platform so that a step does not slip forward underfoot when trodden upon is generally known among persons in the offshore oil & gas industry as causing or likely to cause death or serious physical harm to persons stepping or treading on inadequately secured steps.
> This unsafe condition is a "Recognized Hazard" that should be routinely controlled in the offshore oil & gas industry.
>
> 3. On August 17, 2007, Mariner Energy, Inc. and Mariner Energy Resources, Inc.

were the lessees, permittees, owners and persons responsible for actual operations aboard the Eugene Island 342 C platform.

7.  On August 17, 2007, each of the above named defendants in this matter was responsible for actual operations, including owners, operators, contractors, and subcontractors, and each should have ensured that those operations aboard the Eugene Island 342 C platform subject to their control were conducted in compliance with workplace safety and health regulations and, in addition, free from recognized hazards.

8.  Based on the course of conduct of Defendants, the identification of the unwelded and unsecured steps would have resulted in either remedying of the hazardous condition by the operator of the platform or communication to workers such as Mr. Keller to avoid using those steps.

*See* Exhibit "B", Affidavit of Captain Manders; Exhibit "C", Expert Report of Captain Manders.

9.     Furthermore, Mariner Energy's allegations of negligence against the construction contractors are insufficient to relieve Mariner Energy of the obligations it owed Mr. Keller under law.  A similar finger-pointing summary judgment argument was rejected in *Watkins v. Exxon Mobil Corp. and Dolphin Svcs. Inc.*,  2005 WL 2076410 (S.D. Tex.  2005) (applying substantive Louisiana law due to proximity of operations). In *Watkins*, the plaintiff was injured on a drilling platform and asserted claims against Exxon, the platform owner, including a claim that, as controller of the premises, Exxon failed to maintain the platform properly.  Exxon argued that it was entitled to summary judgment on the basis that it owed no duty to Watkins, an independent contractor, and that any negligence causing Plaintiff's injuries was the result of another contractor's conduct.  *Id.* at *1, 2. Specifically acknowledging Exxon's duties as platform owner and controller, the Court rejected Exxon's argument and held that Exxon's arguments were

insufficient to dispose of Plaintiff's premises liability theory and, as such, summary judgment must be denied.  *Id*. at 3.

### *Platform Owner's Duty of Safety Oversight Entrenched in Louisiana Law*

10. Mariner Energy's motion flies in the face of 5th Circuit law affirming a platform owner's duty to oversee the safety of operations aboard its platforms. Similar to Mariner Energy, in *Dobbs v. Gulf Oil Co.*, the platform operator (Gulf Oil) argued that it could not be held liable because the instrument causing the injury was controlled by another party.  759 F.2d at 1218 (5th Cir. 1985).  However, the evidence indicated that Gulf Oil "maintained general supervisory authority" over operations and assured that drilling was conducted "timely and safely."  *Id.*  Accordingly, the Court concluded that Gulf Oil "had some responsibility for overseeing the safety of the operations and did consider itself responsible for correcting any unsafe conditions" and held that a sufficient fact dispute existed for the jury to resolve.  *Id.*  This duty of a platform owner to maintain "safety supervision" has been further recognized by many courts applying Louisiana law.  *See, e.g., Haas v. Atlantic Richfield,* 799 F.2d 1011 (5th Cir. (La.) 1986); *Seneca v. Philips Petroleum Co.*, 963 F.2d 762, 766 (5th Cir. (La.) 1992).  Mariner Energy's claim that it owed no such duty is untenable.

11. Furthermore, the undisputed facts establish that Mariner Energy was the platform owner of Eugene Island 342 C and that field foreman Lamar Cormier's role on the platform was to oversee day-to-day operations on Mariner's behalf.

```
    14  Q  You go by Lamar Cormier?
    15  A  I go by Lamar.
    16  Q  You work for Mariner?
    17  A  I am a Mariner Energy employee.
```

```
18  Q   As a field foreman?
19  A   As a field foreman.
20  Q   What's that mean you do?
21  A   That means I oversee all the day-to-day
22      operations of the eastern area for Mariner
23      Energy.
24  Q   And when you say the "eastern area," you're
25      talking about particular locations out on

                           7
1       platforms out in the Gulf of Mexico?
2   A   Correct.
3   Q   Including Eugene Island which is a square block
4       out there in the Gulf of Mexico?
5   A   Yes, sir.
6   Q   You were actually onboard a platform August 17,
7       2007, a Mariner platform?
8   A   Correct.
9   Q   The particular number?
10  A   Eugene Island 342, Charlie, "C."
11  Q   You know that because that's an area you've had
12      some responsibility with for a while?
13  A   A couple of years.
```

Exhibit A, "Deposition of Lamar Cormier" at 6:14-7:13; Defendant's Motion for Summary Judgment at p. 4.

Defendant's motion ignores these actual circumstances surrounding Mariner Energy and Mr. Cormier's safety supervisory role on the platform. Accordingly, Mariner Energy's weighing of the incident facts in its favor is an improper attempt at shirking its responsibilities as a premises owner under Louisiana substantive law.

*Negligence within the spheres of Mariner Energy's own activities*

12.     The general maritime law recognizes further that a maritime defendant owes a duty to avoid negligent actions within the sphere of activities over which it has some control. *Hodgen v. Forest Oil Corp.*, 87 F.3d 1512 (5th Cir. 1996) (time charter owes a hybrid duty, arising from tort and contract law to exercise control in a reasonably

prudent manner within the sphere of activity over which it exercises at least partial control). Here, Mariner Energy was charged with reasonably overseeing the safety of operations aboard its platform. Mariner Energy acknowledged this responsibility by requiring Mr. Keller to sign off on the JSA of the premises that Mr. Keller was not permitted to personally conduct.

13. On August 17, 2007, Mariner Energy's foreman Lamar Cormier personally supervised Mr. Keller's orientation of the workplace conditions:

```
                              27
 6  Q. When you were out there on -- on the day of
 7  the accident, did you have a JSA meeting that morning?
 8     A. Yes, sir. As soon as I arrived on the
 9  platform, I went downstairs and I met with the lead
10  operator and I met with the Mariner safety rep or the
11  Mariner representative and I did an orientation.
12           They -- I watched an orientation film and
13  then assigned off, you know, to my JSA and what we
14  would be doing actually that day.
15     Q. Who conducted the JSA meeting that morning?
16     A. Well, I arrived around 9:30. They already had
17  that. But when I went downstairs and met with the
18  lead operator and the foreman, they gave me a personal
19  job, you know, description, what I was going to be
20  doing, and an orientation to the platform. I walked
21  around with the lead operator, you know, showing me
22  what I was going to be doing and actually what was
23  going on and, of course, I questioned him about what
24  kind of production's going on and -- and, you know,
25  the overall job, so to speak.
```

Exhibit "D", Deposition of Keller, p. 27:6-25.

Accordingly, Mariner Energy's foreman Cormier represented to Mr. Keller what hazards were uncovered during the JSA on the morning of the incident and required that Mr. Keller sign off on the JSA:

71
21  Q.  Did -- were you -- you said they talked about
22  the job safety analysis?
23     A.  Yes, sir.
24     Q.  That had already been conducted that morning?
25     A.  Prior to me, yes, because, I mean, obviously

72
1  they did, you know, a safety meeting prior to me
2  landing on the platform.
3     Q.  But they went over this -- what was discussed
4  in the safety meeting?
5     A.  Yes, sir.
6     Q.  What do you recall about that?
7     A.  They was talking about construction, was going
8  to be doing some welding, and they was going to be
9  doing some backloading which in terms mean they were
10  going to, you know, move equipment from the platform
11  to the boat, whichever, you know -- that would have
12  been -- I don't know what they actually moved but --
13  and that was basically what we discussed.

14  Q.  Did you have to sign any paperwork?
15     A.  Yes, sir.
16     Q.  What did you sign?
17     A.  I signed the JSA and I also signed the log-in
18  book, which that's something you do every time you go
19  on a platform.  You sign in.

73
2     Q.  And you actually signed the JSA?
3     A.  Yes, sir.
4     Q.  Did you read the JSA?
5     A.  Yes.
6     Q.  What do you recall it saying?
7     A.  I recalled it saying that construction was
8  going to be doing some welding and that the rest of
9  the, you know, operators and whoever was out there was
10  going to be picking up cleaning the platform.
11     Q.  And did it say anything about slips, trips,
12  falls, anything like that?
13     A.  Yes, because they did have trip hazards.  They

```
14  had welding leads out on the platform.  You know, they
15  had slings out on the platform, tools and just
16  toolboxes.  I mean, it was just -- things were
17  everywhere, you know.  It's a construction job.
```

Exhibit "D", Deposition of Keller, p. 71:21-72:19; 73:2-17.

14.     In addition to warranting the JSA that had been conducted, Mariner Energy foreman Cormier assumed the responsibility for acclimating Mr. Keller to potential hazards on the platform by personally supervising Mr. Keller's worksite orientation.

```
                         10
20  Q   Chance Keller worked for another company?
21  A   Yes.
22  Q   His job was different than your job?
23  A   He was flown out there to be my third man.
24  Q   When Mr. Keller came out, were you responsible
25      for doing any kind of orientation for the rig
                         11
 1      platform?
 2  A   Yes.  We sat down with myself, him, and the
 3      foreman was also present.
```

Exhibit "E", Deposition of Marcantel, p. 10:20-11:3.

```
                         79
10  Q.  Were you given an orientation of the rig when
11  you got there?
12    A.  Yes, sir.
13    Q.  You were told, "Okay, this is where the
14  bathroom is, this is where the galley is, this is
15  where the sleeping quarters are"?
16    A.  Yes, sir.
17    Q.  Were you -- were you told that, or were you
18  actually walked around and shown?
19    A.  Well, I was walked around; and, you know, it
20  was explained to me.
21    Q.  Okay.  So, prior to the time that you actually
22  started working, were you -- did you go up there to
23  the quarters in the building?
24    A.  I went up topside and walked around the top of
25  the platform.  I didn't go to the buildings.  I
```

```
                              80
 1  noticed the buildings.  You know, obviously, living
 2  quarter buildings, they have the buildings; and then
 3  galley's usually white.  The buildings are usually
 4  blue.  Just depends.  But, I mean, I knew the
 5  location, where everything was at.
 6    Q.  When you walked up there, did you go by
 7  yourself or were you given a tour, basically?
 8    A.  I went up with Markentell and I brought my bag
 9  up and I set it inside the washroom.
                              106
19  Q.  On the day of the incident, you said you --
20  you had a safety briefing that covered slips, trips,
21  and falls; is that correct?
22    A.  Yes, sir.
```

Exhibit "D", Deposition of Keller, p. 79:10-80:9; 106:19-22.

### *Mariner Energy failed to reasonably carry out the obligation of communicator it undertook*

15.     Further, one who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking if:

   a) failure to exercise reasonable care increases the risk of such harm; or

   b) the party has undertaken to perform a duty owed by the other to the third person; or

   c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

This is known by Supreme Court as the "Good Samaritan" doctrine. *United States v. Empresa de Viacao Aerea Rio Grandense,* 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984).

16.     A reasonable jury may find that Mariner Energy failed to exercise reasonable

care for its activities in negligently ignoring true information about the platform's conditions, including the hazardous steps. The admissible testimony by affidavit of marine operations expert Captain John Manders simply provides further support for the factual basis of Mariner Energy's negligence. *See* Exhibit "B", Affidavit of Captain Manders; Exhibit "C", Expert Report of Captain Manders. Simply put, a sufficient fact issue exists regarding whether Defendant Mariner Energy neglected to meet its duties under the law and whether this failure proximately caused Mr. Keller's injuries.

**PRAYER**

WHEREFORE, PREMISES CONSIDERED**,** Mr. Keller prays that the Court DENY Defendant Mariner Energy Inc. and Mariner Energy Resources Inc.'s Motion for Summary Judgment, and grant such other and further relief to which he may be justly entitled.

Respectfully submitted,

**DOYLE RAIZNER LLP**

_____
MICHAEL PATRICK DOYLE
State Bar No. 06095650
One Houston Center
1221 McKinney Suite 4100
Houston, Texas 77010
Phone: (713) 571-1146
Fax:  (713) 571-1148
**ATTORNEY-IN-CHARGE
FOR PLAINTIFF MIGUEL KELLER**

OF COUNSEL:
E.A. "Trey" Apffel, III
E. A. Trey Apffel, III, P.C.
1201 25th Ave N
Texas City, TX 77590-5525

## CERTIFICATE OF SERVICE

     I, the undersigned attorney, do hereby certify that a true and correct copy of the foregoing document was forwarded to the following counsel of record on this the 6th day of August, 2009, via hand delivery, overnight courier, U.S. Mail, certified mail, return receipt request, ecf filing, and/or facsimile, pursuant to the Federal Rules of Civil Procedure:

        Mr. Hal James Broussard
        Broussard & Kay, LLC
        557 Jefferson Avenue
        Lafayette, Louisiana 70502
        **ATTORNEY FOR DEFENDANT**
        **ISLAND OPERATING COMPANY, INC**

        Mr. Bradley L. DeLuca
        Ms. Brigid Ashcraft
        Johnson, DeLuca, Kennedy & Kurisky
        1221 Lamar Street, Suite 1000
        Houston, Texas 77010
        **ATTORNEY FOR DEFENDANT**
        **MARINER ENERGY, INC.**

        Mr. Jeromy Hughes
        Brown Sims, P.C.
        Tenth Floor, 1177 West Loop South
        Houston, Texas 77027-9007
        **ATTORNEY FOR DEFENDANT**
        **UNITED PRODUCTION & CONSTRUCTION**
        **SERVICES, INC.**

        Mr. Frank Piccolo
        Preis & Roy
        24 Greenway Plaza, Suite 2050
        Houston, Texas 77046
        **ATTORNEY FOR DEFENDANT**
        **LIVING QUARTERS TECHNOLOGY, INC.**

Mr. Chester Makowski
Royston, Rayzor, Vickery & Williams, L.L.P.
1001 McKinney, Suite 1100
Houston, Texas 77002-6418
**ATTORNEY FOR DEFENDANT
POWER PERFORMANCE, INC.**

_____
Michael Patrick Doyle